## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**GEORGE RICHARD MENDOZA,**

     **Plaintiff,**

**vs.**                   **Case No. 4:20-CV-00214-MW-MAF**

**RICKY D. DIXON**[1]**,**
**SEC'Y, FLORIDA DEP'T OF CORR.,**
**et al.**

     **Defendant(s).**
                          **/**

## REPORT AND RECOMMENDATION

Plaintiff, George Richard Mendoza, an inmate proceeding *pro se* and *in forma pauperis*, initiated this civil rights action pursuant to 42 U.S.C. § 1983 in April 2020. ECF Nos. 1, 6. Plaintiff's fourth amended complaint, the operative complaint, was served upon two of the four defendants: Mark S. Inch and Lieutenant Cruz. ECF Nos. 37, 44. Defendants Stephen Mote and Marvin Tom have not yet been served.[2] This Cause is presently before

---

[1] On November 19, 2021, Ricky D. Dixon succeeded Mark S. Inch as the Secretary of the Florida Department of Corrections (FDOC) and is automatically substituted for Inch, in his official capacity, pursuant to Fed. R. Civ. P. 25(d).

[2] As of the date of the drafting of this Report, the United States Marshals Office is continuing in its efforts to serve Defendants Mote and Tom.

the Court upon the motion to dismiss filed by Defendants Inch and Cruz. ECF No. 71.

After careful review, for the reasons stated below, Plaintiff's First Amendment retaliation claim against Defendant Cruz should proceed and other claims should be dismissed. Accordingly, Defendants' "Motion to Dismiss Plaintiff's Complaint and Motion to Stay Discovery" should be GRANTED in part and DENIED in part.

## I.   Allegations of the Fourth Amended Complaint, ECF No. 33.

Plaintiff sued the former FDOC secretary, Mark S. Inch; Lieutenant Cruz; and two "John Doe" correctional officers later identified as Defendants Tom and Mote, all in their individual and official capacities. ECF No. 33, pp. 1-5. At the time of the alleged events, Cruz, Tom, and Mote were correctional officers at the Reception and Medical Center, in Lake Butler, Florida.[3] Plaintiff's claims against Inch hinge on the FDOC's inmate classification policy. Plaintiff argues the classification policy does not house "security threat group inmates" (STGs) separately from "non-STG" inmates (those who are gay, bisexual, and/or transgender). Id., p. 7. Plaintiff believes this is "inadequate" because the two groups of inmates should be housed in

---

[3] This facility is referred to as "Lake Butler" throughout the Report.

separate facilities due to the longstanding, "pervasive violence" against "non-STG inmates." Id., pp. 8-9.

Between July 19 and July 29, 2019, and on August 12, 2019, Plaintiff filed numerous letters and grievances to Inch, which were disregarded. Id., p. 8. No changes were made to the policy despite his grievances. Id. Plaintiff claims that the FDOC knew of "the rising gang culture" targeting gay, bisexual, and transgender inmates and "failed . . . to implement policies, procedures, an adequate classification system to identify and house STG inmates separate from non-STG inmates." Plaintiff claims the FDOC "cater[s]" to STG inmates more than non-STG inmates" and covers up and encourages violence against non-STG inmates. Id., pp. 8-9. In Plaintiff's opinion, housing the two groups of inmates in the same facility creates a "serious risk of harm." Id., p. 9. Plaintiff blames Inch for the attack he suffered on October 13, 2019. Id., pp. 14-15.

According to Plaintiff, the attack occurred between 9:30 p.m. and 10:30 p.m., in the "D dormitory" at Lake Butler. Id., p. 9. Plaintiff and another inmate, Travis Spade, were showering in plain view of the officer's station when they were targeted by six to eight inmates who rushed in with shanks, robbed their lockers of their belongings, and sexually assaulted them at knife point. Id. Plaintiff claims the inmates were members of the "Unforgiven," "an

STG group," and were motivated by anti-gay and anti-transgender sentiment.[4] Id., pp. 9-10. Plaintiff alleges that the dorm officers (Mote and Tom) abandoned their posts knowingly and with deliberate indifference to the risk of an attack. Id., p. 10. After the attack, Mote and Tom made statements and threats to Plaintiff indicating they conspired with the assaulting inmates to leave the officer station unattended. Id. Plaintiff maintains that if Mote and Tom were at their post as assigned, the attack would have been prevented. Id., p. 11. Plaintiff claims that Lake Butler officials permit or employ STG inmates to control, threaten, and abuse other inmates. Id.

When Plaintiff and Spade reported the attack, Mote, Tom, and other officers told them the attack would not have occurred if they were not gay. Id. Officials refused to take proper steps to recover Plaintiff's stolen property. Id. Cruz slapped Plaintiff multiple times, while Plaintiff was handcuffed and shackled, and threatened to retaliate and put him at further risk of harm if he did not drop the allegations. Id., pp. 11, 16. Plaintiff does not allege any injury from the use of force by Cruz.

Two days after the attack, on October 15, 2019, Inmate Kevin Battles was placed in Plaintiff's cell in retaliation. Id., p. 12. Plaintiff claims this

---

[4] Plaintiff is transgender; and Slade is gay. Id.

housing assignment put him at further risk of serious harm. Id. Plaintiff alleges that Cruz falsified records to cover up the incident. Id. Plaintiff argues that he does not have to wait to be harmed to properly state a "cruel and unusual punishment" claim under the Eighth Amendment. Id. Plaintiff presents no allegation of suffering any threat from or injury by Inmate Battles.

The Court liberally construes Plaintiff's allegations against Defendant Cruz as raising the claims of excessive force in violation of the Eighth Amendment and retaliation in violation of the First Amendment. "A *pro se* pleading is held to a less stringent standard than a pleading drafted by an attorney and is liberally construed." Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017); see also Haines v. Kerner, 404 U.S. 519, 520 (1972).

Plaintiff seeks injunctive relief to have all STG inmates housed in separate institutions away from non-STG inmates; compensatory damages for the value of the cost of his stolen property (an MP3 player, armband, and music); reimbursement of litigation costs; and $100,000 in punitive damages from each defendant for physical harm and emotional and mental trauma resulting from the shower attack. Id., pp. 17-18.

## II.   Standard of Review

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be

granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556; <u>see</u> <u>also</u> <u>Wilborn v. Jones</u>, 761 F. App'x 908, 910 (11th Cir. 2019). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 677 (quoting <u>Twombly</u>, 550 U.S. at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Fed. R. Civ. P. 8 to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). *Pro se* complaints are held to less stringent

standards than those drafted by an attorney. <u>Wright v. Newsome</u>, 795 F.2d 964, 967 (11th Cir. 1986) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people." <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336 (2005) (quoted in <u>Twombly</u>, 550 U.S. at 558).

One additional principle warrants highlighting:  a motion to dismiss does not test the truth of a complaint's factual allegations. As noted above, factual allegations, though not legal conclusions, must be "accepted as true," <u>Ashcroft</u>, 556 U.S. at 678 even when they are "doubtful in fact." <u>Twombly</u>, 550 U.S. at 555. "Instead, it remains true, after <u>Twombly</u> and <u>Iqbal</u> as before, that 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'" <u>Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168-69 (1993) (quoted in <u>Yawn v. Sec'y of Dep't of Corr.</u>, No. 5:13cv228-RH/EMT, 2017 U.S. Dist. LEXIS 96642, 2017 WL 2691423, at *1 (N.D. Fla. June 21, 2017)).

### III.   Defendants' Motion to Dismiss, ECF No. 71.

Defendants maintain that the former FDOC secretary is entitled to Eleventh Amendment Immunity; therefore, Plaintiff cannot seek monetary damages. ECF No. 71, p. 5. Defendants interpret Plaintiff's essential claim as alleging a failure to implement classification policies and procedures that identify and separate STG inmates from non-STG inmates. ECF No. 71, p. 6. Plaintiff's policy claim is not directly related to his other allegations but "hinge[s], albeit vaguely, on the theory of respondeat superior," which is not available under Section 1983. Id. In support, Defendants rely on Monell v. Dep't of Soc. Serv. 436 U.S. 659, 691 (1978) and its progeny. Liability can only attach where the supervisor personally participates in the constitutional violation or where there is a causal connection, which Plaintiff fails to establish. Id., pp. 6-7.

Plaintiff fails to state an excessive force claim against Cruz because Plaintiff suffered no harm; and his factual account is insufficient to show he is entitled to relief. Id., pp. 9-10. However, Cruz does not respond to Plaintiff's First Amendment retaliation claims. Finally, Defendants assert they are entitled to qualified immunity because they did not commit any constitutional violation. Id., pp. 11-12.

## IV.   Plaintiff's Response, ECF No. 79.

Plaintiff's Response is largely a restatement of his operative complaint. ECF No. 79. Plaintiff maintains that his case "boils down to . . . [an] inadequate classification system of housing STG inmates with non-STG inmates despite the longstanding, pervasive record of violence" which offends the Eighth Amendment. Id., p. 5. Plaintiff submits news articles in support of his claim. Id., p. 6.

Plaintiff adds some new details. Inmate Battles is H.I.V. positive; and Plaintiff was in protective management at the time they were housed together. Id., p. 3. Plaintiff maintains that Cruz slapping him in the face multiple times is cruel and unusual punishment under the Eighth Amendment; and it was retaliation for filing grievances, which violates his First Amendment right to freedom of speech. Id., p. 7. Plaintiff claims "retaliation" in his operative complaint, although he did not specifically cite to the First Amendment.

Plaintiff also argues that his case should continue against Mote and Tom for failure to protect him from inmate violence. Id., pp. 9-10. However, the Court will not address these arguments because neither Mote nor Tom have been served with Plaintiff's complaint. They are entitled to file an answer and dispositive motions in their defense once served. Finally, Plaintiff

argues that because his operative complaint survived the Court's initial screening process, it is sufficient to state a claim against all Defendants.

## V.   Discussion

A. <u>Plaintiff's claims against Defendant Inch should be dismissed.</u>

*1. Respondeat Superior*

Ordinarily, a Section 1983 action will not support a claim based on vicarious liability. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009). Instead, a government entity may be liable "only where the [government entity] itself causes the constitutional violation at issue." <u>Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.</u>, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Plaintiff must establish that an official policy or custom was the "moving force" behind the alleged constitutional deprivation. <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 693-94 (1978). The custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." <u>Craig</u>, 643 F.3d at 1310 (citation omitted).

Here, Plaintiff's complaint contains no facts to suggest that the shower attack was a result of any departmental policy or custom that caused any

constitutional violation or that Inch directed anyone to act unlawfully, or knew they would do so, or failed to stop them. Instead, Plaintiff's allegations are conclusory. Broad generalizations are insufficient to state a claim. Isolated incidents are generally insufficient to establish a supervisor's liability. Indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).

Similarly, Plaintiff's suggestion that the denial of his grievances amounts to a constitutional violation fails. "The denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations." Larson v. Meek, 240 F. App'x 777, 780 (10th Cir. 2007); Baker v. Rexroad, 159 F. App'x 61, 62 (11th Cir. 2005) (per curiam) ("Because the failure of [the defendants] to take corrective action upon the filing of [the plaintiff]'s administrative appeal at the institutional level did not amount to a violation of due process, the district court properly determined that [the plaintiff] failed to state a claim under § 1983.").

Nothing alleged by Plaintiff indicates there was any act or omission by Inch beyond the denial of Plaintiff's grievances. No facts suggest that Inch was personally involved in either the shower attack or the subsequent incident involving Cruz nor is there any apparent causal connection with

alleged constitutional violations. Therefore, Plaintiff's claims against Inch, who was merely acting in a supervisory capacity, are insufficient to state a basis for liability and should be dismissed.

### 2. Eleventh Amendment Immunity

Florida's sovereign immunity extends to its agencies, subdivisions, or officers. See Alabama v. Pugh, 438 U.S. 781, 782 (1978); Fitzgerald v. McDaniel, 833 F.2d 1516 (11th Cir. 1987). That "bar exists whether the relief sought is legal or equitable." Papasan v. Allain, 478 U.S. 265, 276 (1986). Naming a government official in his official capacity is the equivalent of naming the governmental entity itself. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). A state official, however, may be sued in his official capacity when the suit alleges a constitutional violation by the official, acting in his official capacity and seeks only prospective injunctive relief. See Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011).

The State of Florida is immune from monetary damages based upon the Eleventh Amendment. Gamble v. Fla. Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1512-13 (11th Cir. 1986). This is so because the Eleventh Amendment of the U.S. Constitution bars suit against a state in federal court absent valid congressional override, waiver of immunity, or consent to suit. See Wusiya v. City of Miami Beach, 614 F. App'x 389, 393

(11th Cir. 2015). Section 1983 does not abrogate state sovereign immunity for damage suits; and Florida has not waived its immunity from § 1983 suits. See id. A state and an agency of a state (i.e. the Florida Department of Corrections) are thus immune from liability under § 1983. See Williams v. Robbins, 153 F. App'x 574, 576 (11th Cir. 2005). Of course, suits for nominal damages against state officers in their official capacities are included in this Eleventh Amendment bar. See Simmons v. Conger, 86 F.3d 1080, 1086 (11th Cir. 1996) (finding district court erred in awarding nominal damages against a judge sued in his official capacity because the relief was barred by Eleventh Amendment).

Plaintiff sued Inch in his individual and official capacity: however, Eleventh Amendment immunity bars Plaintiff from suing Inch for monetary damages. Although Plaintiff also seeks injunctive relief, the type of relief he seeks is unavailable to him as explained in the next section.

B. Plaintiff's Request for Injunctive Relief Should be Denied.

As narrated above, the injunctive relief Plaintiff seeks is to change the FDOC housing classification program so that all gay, transgender, and bisexual inmates are housed separately from other inmates. It is within the sound discretion of the district court to grant or deny a preliminary injunction, which will not be disturbed absent a clear abuse of discretion. Palmer v.

Braun, 287 F.3d 1325, 1329 (11th Cir. 2002). See also LSSi Data Corp. v. Comcast Phone, LLC, 696 F.3d 1114, 1119 (11th Cir. 2012). The standard for issuing a preliminary injunction is the same as is required for a temporary restraining order. See California v. American Stores Co., et al., 492 U.S. 1301 (1989); Johnson v. U.S. Dep't of Agriculture, 734 F.2d 774 (11th Cir. 1984).

In order for Plaintiff to be entitled to a preliminary injunction, he must show:

1. a substantial likelihood of success on the merits;

2. the order is necessary to prevent irreparable injury;

3. the threatened injury outweighs the harm that the order would cause to the non-movant; and

4. the order is not adverse to the public interest.

DeYoung v. Owens, 646 F.3d 1319, 1324 (11th Cir. 2011); see also Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008). District courts within the Eleventh Circuit are applying the standard set forth in Winter. See Madera v. Detzner, Case No. 1:18-cv-152-MW/GRJ, 325 F. Supp. 3d 1269, 1278 (N.D. Fla. Sept. 10, 2018) (citing Winter as the governing standard for a preliminary injunction). A preliminary injunction is an extraordinary and drastic remedy and is "not to be granted unless the movant clearly established the burden

of persuasion as to each of the four prerequisites." <u>Siegel v. LePore</u>, 234

F.3d 1163, 1176 (11th Cir. 2000).

> The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies. A showing of irreparable harm is the *sine qua non* of injunctive relief. The injury must be neither remote nor speculative, but actual and imminent. An injury is 'irreparable' only if it cannot be undone through monetary remedies. The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

<u>Northeastern Florida Chapter of Ass'n of General Contractors v.</u>

<u>Jacksonville</u>, 896 F.2d 1283, 1285 (11th Cir. 1990) (internal citations and

quotations omitted).

First, there is no substantial likelihood of success on the merits of

Plaintiff's case against Inch as explained above. Plaintiff's suggestion that

the current housing classification policy violates the Eighth Amendment

amounts to a legal conclusion. Plaintiff's assertions are based on his own

opinions about how to reduce the risk of assaults upon gay, transgender,

and bisexual inmates in state prisons. His own complaint seemingly

contradicts this point:  if Mote and Tom were at their posts as assigned, the

attack would have been prevented. ECF No. 33, p. 11. Also, being housed with Inmate Battles did not result in any harm to Plaintiff.

This Court should be hesitant to interfere with the administrative processes of a prison. "Granting the injunction would require the federal courts to interfere in the administration of the jail and take over the management or treatment of a single inmate." Brown v. Anglin, 2016 U.S. Dist. LEXIS 158113, 2016 WL 6803133, at *2 (N.D. Fla. June 27, 2016), report and recommendation adopted sub nom. Brown v. Holland, 2016 U.S. Dist. LEXIS 158110, 2016 WL 6780319 (N.D. Fla. Nov. 15, 2016). "[C]ourts are ill-equipped to deal with" the complexities of prison administration. Lawson v. Singletary, 85 F.3d 502 (11th Cir. 1996).

Furthermore, it is well-settled that inmates do not have a constitutional right against being transferred to another institution, have no right to incarceration in a prison of their choice, and are not entitled to any prisoner- or status classification. Smith v. Crews, 738 F. App'x 981, 984 (11th Cir. 2018) citing Meachum v. Fano, 427 U.S. 215, 223-24 (1976); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 (1976).

Plaintiff places inmates into two categories he labels as "STG inmates" and "non-STG inmates." By Plaintiff's own definition, he seeks separate

housing facilities or institutions for gay, transgender, and bisexual inmates. Granting the relief would provide Plaintiff, an inmate, with the means within which to dictate prison housing assignments across the entire state of Florida. Prison assignments are a function wholly within the discretion of prison authorities. Olim, 461 U.S. at 245.

Plaintiff has not shown that such an injunction is necessary to prevent an irreparable injury. The alleged events occurred more than two years ago while Plaintiff was housed at Lake Butler. Plaintiff does not indicate that he is under any risk of irreparable injury since that time. Moreover, Plaintiff is no longer housed at Lake Butler; he is currently at Florida State Prison. Plaintiff's claims, without more, are too greatly attenuated to be attributable to a system-wide housing classification policy.

Finally, the public interest element of the equation is, at best, a neutral factor at this juncture. The Court acknowledges the seriousness of Plaintiff's allegations. However, because Plaintiff cannot satisfy all four prerequisites, his request for injunctive relief should be DENIED.

C. Plaintiff's claims against Defendant Cruz.

1. *Plaintiff's excessive force claims under the Eighth Amendment should be denied.*

"A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the

official does not respond reasonably to the risk." <u>Caldwell v. Warden, FCI Talladega</u>, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis and internal quotation marks omitted); <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994). "To prevail on such a claim brought under § 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." <u>Townsend v. Jefferson Cty.</u>, 601 F.3d 1152, 1158 (11th Cir. 2010). <u>See</u> <u>Franklin v. Curry</u>, 738 F.3d 1246, 1250 (11th Cir. 2013) ("[d]eliberate indifference requires the following: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence").

"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." <u>Rodriguez v. Sec'y for Dep't of Corr.</u>, 508 F.3d 611, 619-20 (11th Cir. 2007) (citing <u>Farmer</u>, 511 U.S. at 844). Accordingly, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." <u>Id</u>. (citing <u>Farmer</u> at 845).

To establish excessive force, the force must have been "sadistically and maliciously applied for the very purpose of causing harm." <u>Johnson v.</u>

Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002). Eighth Amendment claims based on *de minimis* uses of physical force are not cognizable unless they involve force that is "repugnant to the conscience of mankind." Hudson, 503 U.S. at 8. Moreover, although a lack of injury "is not conclusive about the presence or absence of constitutional violation [,] a lack of serious injury can illustrate how much force was actually used." Walker v. City of Orlando, 368 F. App'x 955, 956 n.1 (11th Cir. 2010) (internal citation omitted); see also Stephens v. Broward Sheriff's Office, 84 F. Supp. 3d 1327, 1337-38 (S.D. Fla. Dec. 10, 2014) (considering injury to the extent that it "inform[s] the Court as to the force used by the defendant during the course of the encounter."). While nominal damages may be appropriate in the absence of physical injury, that still requires the "violation of a fundamental constitutional right." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003).

Still, a prisoner "who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (citing Hudson, 503 U.S. at 9). Such an encounter involving only *de minimis* force is "insufficient, as a matter of law, to state a constitutional violation." Bryan v. Spillman, 217 F. App'x 882, 886 (11th Cir. 2007). Not "every malevolent touch . . . gives rise to a federal cause of action." Hudson, 503 U.S. at 9. Indeed, federal courts "have

routinely held that a single push, shove, punch, or blow . . . simply does not rise to constitutional dimensions." <u>Neal v. Miller</u>, 778 F. Supp. 378, 382 (W.D. Mich. 1991).

Derogatory, demeaning, profane, threatening, or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation. <u>Edwards v. Gilbert</u>, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989); <u>see also</u> <u>McBride v. Deer</u>, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts . . . resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.").

Plaintiff's allegations that Cruz slapped and threatened him, without more, simply fails to rise to the level which would sufficiently state an excessive force claim in violation of the Eighth Amendment. At best, the incident amounts to the use of *de minimis* force. Nonetheless, that is not the end of the inquiry. Plaintiff argues in his Response that Cruz's actions also constitute retaliation in violation of the First Amendment.

   *2. Plaintiff's retaliation claims under the First Amendment should proceed.*

"To state a retaliation claim, an inmate must show he (1) engaged in First Amendment protected conduct and (2) suffered an adverse action that would deter a person of ordinary firmness from exercising his First

Amendment rights (3) because he engaged in protected conduct." Sears v. Roberts, 922 F.3d 1199, 1210 (11th Cir. 2019) citing Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). The very purpose of retaliation claims is to ensure that prison officials do not chill inmates in the exercise of their First Amendment rights. Sears, 922 F.3d at 1210.

Punitive damages are not barred in the absence of physical injury. "Indeed, punitive damages may be awarded where there is substantial harm and where there is none." Hoever v. Marks, 993 F.3d 1353, 1359 (11th Cir. 2021) (internal quotations and citations omitted). In addition, "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003). "Nominal damages are similarly appropriate in the context of a First Amendment violation." KH Outdoor, LLC v. City Trussville, 456 F.3d 1256, 1261 (11th Cir. 2006).

Here, it is alleged that Cruz "assaulted (slapped) . . . [P]laintiff multiple times and threatened . . . to put him at risk of further harm by other inmates if [he] did not drop his allegations." ECF No. 33, p. 11. Plaintiff was handcuffed and shackled at the time. According to Plaintiff, two days later Cruz carried out the threat by assigning Inmate Battles to the same cell as

Plaintiff. Id., p. 12. Plaintiff claims this was retaliation for filing his grievances. Plaintiff provides sufficient facts to state a retaliation claim at the Rule 12(b)(6) stage. Cruz presents no argument to the contrary. Accordingly, the retaliation claim against Cruz should PROCEED.

D. Qualified Immunity

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The court considers: "whether the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the alleged transgression. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Keith v. Dekalb Cty., 749 F.3d 1034 (11th Cir. 2014). In short, Plaintiff must show that Defendant's actions violated a constitutionally protected right and the right was "clearly established" at the time.

Dismissal based on qualified immunity is proper "when the complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). While the Court is required

to accept the allegations in the complaint as true, once a defendant raises a qualified immunity defense, the burden of persuasion belongs to the Plaintiff. Id. The Court is not required to accept Plaintiff's legal conclusions as true.

As narrated above, Plaintiff's allegations regarding Inch's actions do not sufficiently state a constitutional claim. Consequently, Inch is entitled to qualified immunity. However, at this stage, Plaintiff has sufficiently stated a First Amendment retaliation claim; therefore, Cruz is not entitled to qualified immunity.

## VI.    Conclusion and Recommendation

It is respectfully RECOMMENDED that

1.    Defendants' Motion to Dismiss, ECF No. 71, should be **GRANTED**, in part, and **DENIED**, in part.

2.    Plaintiff's claims against Defendant Inch should be **DISMISSED**.

3.    Plaintiff's claims against Defendant Cruz alleging excessive force in violation of the Eighth Amendment should be **DISMISSED**.

4.    Plaintiff's First Amendment retaliation claim against Defendant Cruz should **PROCEED**.

5.    Plaintiff's request for injunctive relief should be **DENIED**.

6.    Finally, the case should remain open as to Defendants Mote and Tom who have not yet been served with Plaintiff's complaint.

IN CHAMBERS at Tallahassee, Florida, on December 7, 2021.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).