## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**GEORGE RICHARD MENDOZA,**

     **Plaintiff,**

**vs.**                       **Case No. 4:20-CV-00214-MW-MAF**

**RICKY D. DIXON,**
**SEC'Y, FLORIDA DEP'T OF CORR.,**
**et al.**

     **Defendant(s).**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, George Richard Mendoza, an inmate proceeding *pro se* and *in forma pauperis*, sued four defendants in this civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 33. Eventually, Mendoza identified the "John Does" as Stephen Mote and Marvin Tom. Defendant Mote was served; and Defendant Tom waived service. ECF Nos. 115, 134. Each filed a motion to dismiss maintaining that Mendoza failed to exhaust his administrative remedies. ECF Nos. 122, 136.

After careful review, for the reasons stated below, the undersigned recommends that both motions to dismiss be granted; and the case against Defendants Mote and Tom be dismissed.

## I.    Mendoza's Fourth Amended Complaint, ECF No. 33.

Mendoza sued former FDOC secretary, Mark S. Inch; Lieutenant Cruz; and two "John Does" later identified as Defendants Mote and Tom, all in their individual and official capacities. ECF No. 33, pp. 1-5. The case against Defendant Inch was dismissed; however, Mendoza's First Amendment retaliation claim against Defendant Cruz remains. ECF Nos. 110, 124. The Court addressed the allegations involving Defendants Inch and Cruz in a previously adopted Report, ECF No. 110, and, therefore, does not repeat those allegations here. Accordingly, this Report outlines Mendoza's allegations against Defendants Mote and Tom.

Mote and Tom were correctional officers at the Reception and Medical Center, in Lake Butler, Florida.[1] It was there that Mendoza was attacked on October 13, 2019, between 9:30 p.m. and 10:30 p.m., in the "D dormitory." ECF No. 33, p. 9. Six to eight inmates targeted Mendoza and fellow inmate, Travis Spade, while they showered in plain view of the officer's station. Id. The attackers rushed in, sexually assaulted Mendoza and Spade at knife point, and stole their property from the lockers. Id. Mendoza claims the inmates were members of the "Unforgiven," "an STG group," and were

---

[1] This facility is referred to as "RMC Lake Butler" throughout the Report.

motivated by anti-gay and anti-transgender sentiment.[2] Id., pp. 9-10. According to Mendoza, STGs are "security threat group inmates," who, in his opinion, should be housed separately from other inmates. Id., p. 7. Mendoza alleges that the dorm officers -- Mote and Tom -- knowingly abandoned their posts with deliberate indifference to the risk of an attack. Id., p. 10. After the attack, Mote and Tom made statements and threats to Mendoza suggesting they conspired with the attackers to leave the officer station unattended. Id. Mendoza argues that if Mote and Tom were at their post as assigned, the attack would have been prevented. Id., p. 11.

When Mendoza and Spade reported the attack, Mote, Tom, and other officers countered that this would not have occurred if Mendoza and Spade were not gay. Id. Officials refused to take proper steps to recover Mendoza's stolen property. Id. Two days after the attack, on October 15, 2019, inmate Kevin Battles was placed in Mendoza's cell as retaliation for reporting the incident, which placed Mendoza at further risk of serious harm. Id., p. 12. Mendoza argues that he does not have to wait to be harmed to properly state an Eighth Amendment "cruel and unusual punishment" claim. Id. Mendoza does not allege that Battles ever threatened or injured him.

---

[2] Mendoza claims that he is transgender; and Slade is gay. Id

Construing the operative complaint liberally, Mendoza claims that Mote and Tom failed to protect him in violation of the Eighth Amendment. "A *pro se* pleading is held to a less stringent standard than a pleading drafted by an attorney and is liberally construed." Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017); see also Haines v. Kerner, 404 U.S. 519, 520 (1972).

Mendoza seeks compensatory damages for the value of the cost of his stolen property; reimbursement of litigation costs; and $100,000 in punitive damages from each defendant for the physical harm and emotional and mental trauma resulting from the attack. Id., pp. 17-18.

## II.  Standard of Review

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Although legal conclusions can provide the framework of the complaint, they

must be supported by factual allegations. Id. at 679. Detailed factual allegations are not required, but the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." Twombly, 550 U.S. at 555 (citation omitted). The factual allegations must adequately "raise a right to relief above the speculative level." Id. (citations omitted). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), abrogated on other grounds by Mohamad v. Palestinian Auth., 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (citing SEC v. ESM Grp., Inc., 835 F.2d 270, 272 (11th Cir. 1988)).

The PLRA requires a prisoner to exhaust his administrative remedies before filing a civil rights action. 42 U.S.C. § 1997(e); Porter v. Nussle, 534 U.S. 516, 524 (2002); Gould v. Owens, 383 F. App'x 863, 868 (11th Cir. 2010). There is no discretion to waive this requirement. Bryant v. Rich, 530 F.3d 1368, 1373 (11th Cir. 2008). The PLRA requires proper exhaustion in compliance with the procedural rules and deadlines of an institution's

grievance system. <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006). The exhaustion requirement "reduces the quantity and improve[s] the quality of prisoner suits" and affords prison officials the opportunity to address complaints internally before a Section 1983 case is filed. <u>Porter</u>, 534 U.S. at 525. This includes the filling of an appeal. Even if an appeal were futile, the requirement cannot be waived. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." <u>Bryant</u>, 530 F.3d at 1374 (quoting <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003)). Such a defense is treated "like a defense for lack of jurisdiction," although it is not a jurisdictional matter. <u>Id.</u> at 1374. It is "not generally an adjudication on the merits." <u>Id.</u>

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008) (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." <u>Id.</u> "If, in that light, the defendant is entitled to have the complaint dismissed

for failure to exhaust administrative remedies, it must be dismissed." Id. (citing to Bryant, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373-74, 1376). The burden of proof for evaluating an exhaustion defense rests with the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); see also Turner, 541 F.3d at 1082-83.

Nonetheless, "[a] remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose. Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes, and so are not available." Turner, 541 F.3d at 1084 (quoting Goebert v. Lee Cty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). "Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016).

III.   **Defendants' Motions to Dismiss, ECF Nos. 122 and 136.**

Mote and Tom submitted separate motions to dismiss; and they are nearly identical except for their names. Accordingly, the Court addresses the two motions to dismiss simultaneously. Defendants argue dismissal is appropriate because Mendoza failed to exhaust his administrative remedies. ECF Nos. 122, 136. Specifically, Mendoza did not file an informal grievance within twenty days of the attack as required by Rule 33-103.011(1)(a). After the time limit passed, Mendoza filed informal grievances falsely claiming that he had not received responses, when they were properly returned without action. ECF Nos. 122, 136, p. 10.

Defendants allege that only when Mendoza received notification that the informal grievances were untimely did he file formal grievances alleging there was no response to the grievance filed on October 18, 2019. Id. According to Defendants, the institution returned Mendoza's formal grievances without action because he did not comply with the informal grievance level. Id., p. 10. In the responses to grievances, "Department officials clearly lay out that Plaintiff did not in fact submit any earlier informal grievances . . . [and] has only two informal grievances which were filed during that timeframe, both of which relate to other issues." Id., pp. 10-11. Defendants rely upon Mendoza's institutional grievance log. Id., p. 11.

Defendants maintain that the informal and formal grievances were properly returned without action; and the appeals were properly returned for failure to comply with the grievance process at earlier levels. Id.

Defendants further argue that even if Mendoza timely filed informal grievances and those grievances were not processed, the claims would still be unexhausted. Id. When there was no timely response to the grievances, Mendoza was entitled to proceed to the next step and "must clearly indicate this fact when filling at the next step," pursuant to Rule 33-103.011(4), Fla. Admin. Code. Id., p. 12. Yet, Mendoza did not do so. Id.

## IV.   Mendoza's Responses, ECF Nos. 127, 138.

Predictably, because the motions to dismiss are nearly the same, Mendoza's responses to each motion are identical. ECF No. 127, 138. Mendoza accuses the Florida Department of Corrections (FDOC) of having a "well documented history" of disposing of- or refusing to log inmate grievances so FDOC can argue it never received an inmate's grievances. ECF No. 127, p. 4. Mendoza insists he submitted a timely, informal grievance on October 18, 2019; "logged it in his personal logs"; and claims prison cameras captured him placing it in the grievance box. Id., pp. 4-5.

Before receiving a response, Mendoza was transferred to South Florida Reception Center (SFRC) on November 4, 2019, and then, to

Okeechobee C.I. on November 7, 2019. Id., pp. 5-6. Mendoza claims he immediately restarted the grievance process once he finally received his legal papers. Mendoza submitted copies of his grievances and a person log detailing nearly every day from October 13, 2019, through April 2020. The logs include the dates of his grievances, letters, and requests. ECF No. 127, pp. 14-27. Defendants Mote and Tom did not file replies and did not dispute any of Mendoza's exhibits.

## V.   Discussion

### A.  FDOC Grievance Procedures

Before addressing the parties' arguments, the Court outlines the FDOC grievance procedure. The FDOC provides a three-step grievance procedure: "(1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the FDOC." Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004); Fla. Admin. Code § 33-103.005-103.007. Informal grievances must be received by the designated prison official within twenty calendar days of the incident date. Fla. Admin. Code § 33-103.011(1)(a). To appeal the denial of an informal grievance, the prisoner must file a formal grievance within fifteen calendar days and attach the contested informal grievance. Id., §§ 33-103.006(1)(a) & (g) and 33-103.011(1)(b)(1). To appeal

the denial of a *formal* grievance (whether filed as the initial grievance or as the appeal of an informal grievance), the inmate must, within fifteen calendar days of receiving the denial, file a grievance appeal to the Secretary and attach the contested grievances. Id., §§ 33-103.007(1) & (5) and 33-103.011(1)(c).

However, inmates are permitted to skip step one for certain grievances, namely, allegations of sexual abuse, which may be filed directly with the warden's office or with the FDOC Secretary. Id., §§ 33-103.002(5), 33-103.005(1), and 33-103.006(3). More importantly, grievances alleging sexual abuse can be filed ***at any time*** after the incident is alleged to have occurred. Id., § 33-103.006(3)(j)(1)(a).

Inmates must comply with the grievance procedure in order to satisfy the exhaustion requirement. Untimely and procedurally defective grievances do not satisfy the PLRA's exhaustion requirement. Woodford, 548 U.S. at 90-96; Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005).

B. Mendoza Failed to Exhaust His Administrative Remedies

The alleged attack – a sexual battery at knife point -- occurred on October 13, 2019. ECF No. 33, p. 9. Mendoza claims he reported the incident on the same day to Mote and Tom "and other staff who refused to take reasonable and adequate steps to recover [his] stolen property." Id., p. 11.

In his complaint, Mendoza maintains he filed numerous letters and grievances to prison officials about the threat of "STG" inmates, all of which were ignored. Id., p. 13. Mendoza accused Cruz of attempting to suppress and prevent him from reporting the attack by threatening and slapping him, assigning another inmate to Mendoza's cell, and altering or otherwise falsifying computer records to cover up the incident. Id., p. 16. Mendoza is not required to plead facts relating to exhaustion of administrative remedies because this is an affirmative defense. Jones, 549 U.S. at 216. At this stage, the Court accepts Mendoza's allegations in his complaint as true. Brooks, 116 F.3d at 1369.

Pursuant to the Florida Administrative Code, Mendoza's informal grievance was due by November 7, 2019. However, because the incident involved sexual abuse, Mendoza could also file a formal grievance at ***any time*** after the date of the incident; and it would have been timely. Fla. Admin. Code § 33-103.006(3)(j)(1)(a). After the initial filing, all other timeframes apply. Fla. Admin. Code § 33-103.011(1(b)(4).

Defendants argue that Mendoza did not file an informal grievance on October 18th and provide the institutional log to support that position. ECF No. 136, p. 11. The institutional log lists Mendoza's informal grievances filed during the period beginning October 13, 2019, through April 27, 2020; and

the first entry in the log is dated October 21, 2019. ECF No. 122, p. 15. There is no log of Mendoza's formal grievances. Nonetheless, Mendoza argued in his complaint that prison officials falsified documents relating to his grievances and otherwise interfered with his reporting of the incident. The Court is required to accept Mendoza's allegations as true. Moreover, Defendants' factual allegations presented in the motion to dismiss clearly conflict with Mendoza's response. As such, the Court takes Mendoza's factual account as true, pursuant to Turner, supra, and proceeds to step two to make the following factual findings.

The undersigned reviewed Mendoza's personal log, which is an extensive list of events, grievances, and requests. [3] ECF No. 127, pp. 14-27. Still, there is no way of knowing which grievances addressed the involvement of these defendants in the October 13th incident because Mendoza does not

---

[3] Mendoza listed numerous grievances in his personal log addressing the following issues: "failure to maintain security," "laundry," "stolen property," shackles, food service, "in cell on DC status," HIV testing, inadequate medical treatment, "Sharm Invest Avon Park CI," "negative transfer," breaches of security, "failure to maintain security," "cruel and unusual punishment," housing "STG & non STG" inmates together or other housing matters, failure to monitor dorm, "threats of assault to drop PREA," shared housing "pending DR," "RMC ICT," extra blankets or lack of heat, law library access, ICT not following guidelines, sleep deprivation, failure to pick up grievances, shaving and haircuts, legal mail, "RMS," showers, status of appeals, sick call slips, a broken window, and "Psych" emergency procedures. ECF No. 127, pp. 14-15, 18-27. Some are duplicate. The sexual assault is listed as having occurred on October 13, 2019. Id., p. 14. There are entries alleging that various prison officials tried to get Mendoza to drop PREA allegations. Id.

indicate so in the log. ECF No. 127, pp. 14-27. Given the detail in Mendoza's log, this seems unusual. Grievance entries correlating to Mendoza's assertions only state a "failure to maintain security" without further details attributable to these defendants or the attack. Id., pp. 14, 16. Accordingly, the Court cannot rely upon Mendoza's personal log to decide the exhaustion issue. The Court relies on Mendoza's statements and the grievance exhibits to determine whether administrative remedies were exhausted.[4]

### 1. Mendoza's First Informal Grievance filed October 18, 2019

Assuming Mendoza's statements are true, he chose to file an informal grievance five days after the attack, on October 18, 2019. ECF No. 127, pp. 4-5. The rule provides that the institution shall complete a response to an informal grievance "within 15 days." Fla. Admin. Code § 33-103.011(3)(a). So, Mendoza should have received a response to his grievance by Monday, November 4, 2019, since the fifteenth day was on a weekend.[5] Then, within fifteen days of an institutional response (or lack thereof), Mendoza was required to proceed to the next step and file a formal grievance – by

---

[4] The grievance exhibits are duplicated within Mendoza's responses at ECF Nos. 127, pp. 21-67 and 138, pp. 22-68. This Report cites to the grievances submitted with Mendoza's latter response, ECF No. 138.

[5] "If the 15th day referenced in paragraphs 33-103.011(1)(b), (c) and (d), F.A.C., falls on a weekend or holiday, the due date shall be the next regular work day." Fla. Admin. Code § 33-103.011(5).

November 20th. Id., § 33-103.011(b)(1). Mendoza claims he did not receive an institutional response because he was transferred to SFRC, on Monday, November 4 – the same day the response was due -- and transferred a second time, to Okeechobee C.I., three days later, on Thursday, November 7, without any of his property or legal documents. ECF No. 138, pp. 6, 9.

Mendoza claims that on November 7, he submitted a request to determine the status of the October 18th grievance. ECF No. 138, p. 9. See personal log, ECF No. 127, p. 18. On November 15, Mendoza received a response stating there was no record of the grievance. Id., p. 10. This still left Mendoza with an additional five days to file a formal grievance to appeal the failure to respond to his October 18th grievance.

Mendoza argues in his response that the institution's failure to respond to the grievance renders this administrative remedy exhausted. ECF No. 127, p. 7. He relies on Miller v. Tanner, 196 F.3d 1190 (11th Cir. 1999), Lewis v. Washington, 300 F.3d 829 (7th Cir. 2002), and other cases. Id. But failure to provide a response to a grievance does not render the entire process unavailable to Mendoza because he had the option to appeal after the time for a response expired. Garcia v. Obasi, 2022 U.S. App. LEXIS 5937, *10-11, 2022 WL 669611 (11th Cir. Mar. 7, 2022) (citing Bryant, 530

F.3d at 1372) (unpublished). Unfortunately, Mendoza did not file any formal grievances until November 22 (two days after the deadline). Those formal grievances are outlined in the sections below; but none applied to the October 18th grievance. ECF No. 138, pp. 41, 43, 45, 47, and 49. Thus, the October 18th grievance was not exhausted.

2. *Mendoza's Second Informal Grievance, No. 404-1911-0172.*

With two days remaining to appeal the October 18th grievance, Mendoza chose to file Informal Grievance No. 404-1911-0172 on November 18. ECF No. 138, pp. 22-23. Mendoza reported three issues: (1) the sexual assault resulted from the officers' failure to protect him and maintain security, (2) the institution never responded to his October 18th grievance and transferred him to Okeechobee, and (3) Cruz threatened him and retaliated against him. Id. The grievance was returned the same day with no action for non-compliance because it addressed more than one issue. Id., p. 25. Because Mendoza did not appeal, this grievance was unexhausted.

3. *Mendoza's Five Informal Grievances Filed November 20, 2019*

Two days later, on November 20, Mendoza filed five more informal grievances: 404-1911-0189 ("189"); 404-1911-0190 ("190"); 404-1911-0191 ("191"); 404-1911-0192 ("192"); and 404-1911-0193 ("193").

In Informal Grievance No. 189, Mendoza explained that because he did not receive a response to his initial October 18th grievance, he was filing this one in its place. ECF No. 138, p. 26. Mendoza reasserted his allegations of the sexual assault and the failure to maintain security. Id. The same day, the institution responded that the grievance was untimely. Id., p. 28. Mendoza timely appealed with Formal Grievance No. 1911-404-099. Id., p. 41. He stated that the denial was inappropriate because there was no response to the timely filed October 18th grievance. Id. Twenty days later, the institution returned the grievance because there was no documentation of the October 18th grievance and Grievance No. 189 was untimely. Id., p. 42. Mendoza did not further appeal. Instead, Mendoza filed Informal Grievance No. 190, which was similar to Grievance No. 189. Id., p. 29. The institution returned it as untimely. Id., p. 31. Mendoza appealed the decision to the FDOC secretary; and the appeal was returned without action because his grievances did not comply with procedures. Id., pp. 55-56.

Then, Mendoza filed Informal Grievance No. 191 alleging that Sergeant Everheart, Captain Taylor, and another prison official did not properly investigate the sexual assault, "did a half hearted search" for the stolen property, and officials told him that the assault would not have occurred if Mendoza and Spade were not gay. Id., p. 32. Next, in Informal

Grievance No. 192, Mendoza reported that Sergeant Everheart and Captain Taylor coerced him and Spade to rewrite their statements as to the number of perpetrators and not to include the failure to monitor or the stolen property, again alleged the physical assault by Cruz. Id., p. 35. Informal Grievance Nos. 191 and 192 were returned without further action as untimely. Id., pp. 34, 37. Mendoza's appeals were returned. Id., pp. 46, 48. Still, these allegations involved the conduct of other prison officials following the sexual assault. This cannot exhaust administrative remedies because it did not put the institution on notice for conduct attributable to Mote and Tom.

Finally, in Informal Grievance No. 193, Mendoza claimed that after the sexual assault incident, prison officials failed to maintain security when they housed Inmate Battles with him from October 15th through October 17th in violation of FDOC rules. The grievance was returned without action the same day as untimely. Id., p. 40. The appeal was also returned as untimely. Id., pp. 49, 50. Later, Mendoza received a corrected response acknowledging that the return was incorrect because the issue occurred on October 15, and he had until November 4, 2019, to report it. Id., p. 52. The institution admitted that because Mendoza was transferred on November 4, he was hindered from filing the grievance. Id. However, like Grievance Nos. 191 and 192,

these allegations were not relevant to the claims against Mote and Tom and are insufficient to address the present issue of exhaustion.

### 4. Mendoza's Appeals to FDOC Secretary - December 2019

To the extent Mendoza would argue that he exhausted the matters involving Defendants Mote and Tom via a formal grievance, this is not the case. Mendoza's appeals do not address the matter at hand. First, Mendoza filed a formal grievance to the FDOC Secretary on December 12th, made several allegations: (1) he submitted an informal grievance on October 18th, which should be captured on video; (2) documents were falsified; (3) Battles was placed in his cell out of retaliation. ECF No. 138, p. 51. Mendoza asked for an investigation and compensatory damages. Id.

Then, on December 16, Mendoza submitted four other appeals to the FDOC Secretary (Administrative Remedy/Appeal Nos. 19-6-44877 through 19-6-44880) and attached his informal and formal grievances. Mendoza stated the responses he received were inappropriate and a tactical effort to support institutional claims that inmates had not exhausted administrative remedies; and the video from October 18th would show he placed a grievance in the grievance box. Id., pp. 53, 55, 57, and 59. Mendoza "call[ed] the videotape feed as evidence." Id. On January 6, 2020, the appeals were returned without action for failure to comply with the grievance procedure.

Id., pp. 54, 56, 58, and 60. Mendoza did not exhaust his administrative remedies; thus, the case against Mote and Tom should be dismissed.

## C. No Interference Rendered the Grievance Process Unavailable

Mendoza argues that the actions of prison officials interfered with his ability to properly exhaust his administrative remedies. This is not so. When "a prison official's serious threats of substantial retaliation against an inmate for lodging in good faith a grievance make the administrative remedy 'unavailable,' . . . the exhaustion requirement as to the lodging a grievance or pursuing a particular part of the process" is lifted. Turner, 541 F.3d at 1085. A remedy is deemed "unavailable" when:

> (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

Id.

Here, Mendoza was not deterred from lodging any grievances or pursuing a particular part of the process. In fact, the record shows quite the opposite is true. Accepting the October 18th grievance was filed, in total, Mendoza filed eight informal grievances related in some way to the attack of October 13th. ECF No. 127, pp. 4-5; ECF No. 138, pp. 22-23, 26, 29, 32, 35, 40. Quite simply, Mendoza did not appeal the grievances which were

applicable to Mote and Tom. This is not because Mendoza was denied access to any part of the grievance process but because -- as evident from his personal log -- he continued to file informal grievances against different individuals, and, quite frankly, filed dozens of requests, grievances, and letters to prison officials addressing a litany of other issues. Mendoza's personal log shows that he filed more than 90 grievances between October 2019 and January 2020. There is no apparent interference from prison officials. Mendoza demonstrates that he was in no way deterred from filing grievances and was more than familiar with the grievance procedure. The claims against Mote and Tom are due to be dismissed.

## VI.    Conclusion and Recommendation

It is respectfully **RECOMMENDED** that Defendants' Motions to Dismiss, ECF Nos. 122 and 136, be **GRANTED** for failure to exhaust administrative remedies. The case against Defendant Mote and Defendant Tom should be **DISMISSED**. However, as decided previously, the First Amendment retaliation claims continue against Defendant Cruz.

IN CHAMBERS at Tallahassee, Florida on June 27, 2022.

s/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

# <u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).