## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**GEORGE RICHARD MENDOZA,**
**DC#099172,**

      **Plaintiff,**

**vs.**                              **CASE NO. 4:20-CV-214-MW-MAF**

**MARK S. INCH, SEC'Y,**
**FLA. DEP'T OF CORR.,**
**et al.,**

      **Defendants,**
_____/

## REPORT AND RECOMMENDATION

      Plaintiff, George Richard Mendoza, an inmate proceeding *pro se*, initiated this civil rights action pursuant to 42 U.S.C. § 1983. The fourth amended complaint is the operative complaint. ECF No. 33. This Cause is currently before the Court upon Defendants' Motion for Summary Judgment, with supporting exhibits. ECF No. 175. Mendoza filed an unsworn Response with exhibits.[1] ECF No. 194. After careful review, for the reasons stated

---

[1] Most of Mendoza's exhibits are duplicative of the exhibits previously filed by Defendants supporting their motion for summary judgment. See ECF No. 193, pp. 1, 6-10, 12-13, 16-17, 19-20, 22-27, 29-32, 42-44, 45, 50, 54.

Accordingly, for clarity in this Report, any references to duplicative exhibits will use the citation for those filed with Defendants' Motion for Summary Judgment (ECF No. 175-1 through ECF No. 175-14).

below, Defendants' Motion for Summary Judgment, ECF No. 175, should be **GRANTED**; and the case should be **CLOSED**.

## I.   Mendoza's Fourth Amended Complaint, ECF No. 33

Originally, Mendoza sued a former secretary of the Florida Department of Corrections (FDOC); Lieutenant Cruz; and two "John Does" later identified as Defendants Mote and Tom, all in their individual and official capacities. ECF No. 33, pp. 1-5. The Court previously dismissed all claims against the former secretary as well as the excessive force claims against Cruz. See ECF Nos. 110 and 124. Mendoza was allowed to proceed on the retaliation claim against Cruz and the failure-to-protect claims against Mote and Tom. See ECF Nos. 124, 158. The events at issue in this case occurred at the Reception and Medical Center, in Lake Butler, Florida, a state prison, where Mote, Tom, and Cruz were correctional officers. [2] ECF No. 33.

Mendoza's allegations are as follows. Mendoza and a fellow inmate, Travis Spade, were attacked by six to eight inmates in the "D dormitory" showers, on October 13, 2019, between 9:30 p.m. and 10:30 p.m. Id., p. 9. Mendoza and Spade were showering in plain view of the officer's station (which was unattended) when the inmates rushed in, sexually assaulted them at knife point, and stole property from their lockers. Id. Mendoza

---

[2] This facility is referred to as "RMC Lake Butler" throughout the Report.

believes the attackers were motivated by anti-gay and anti-transgender sentiment and belong to the "Unforgiven," "an STG group." Id., pp. 9-10. According to Mendoza, "STGs" are "security threat group inmates," who, in his opinion, should be housed separately from other inmates. Id., p. 7. Mendoza alleged Mote and Tom knowingly abandoned their posts with deliberate indifference to the risk of an attack. Id., p. 10. After the attack, Mote and Tom made statements to Mendoza, which suggested to him they conspired with inmates to leave the officer station unattended. Id. If Mote and Tom were at their post, the attack would have been prevented. Id., p. 11.

When Mendoza and Spade reported the attack, Mote, Tom, and other officers said it would not have occurred if the two were not gay. Id. Officials refused to take proper steps to recover Mendoza's stolen property. Id. Cruz threatened to retaliate if Mendoza did not drop the allegations. Id., pp. 11, 16. Two days after the attack, on October 15, 2019, inmate Kevin Battles was placed in Mendoza's cell as retaliation for reporting the incident. Id., p. 12. The housing assignment, allegedly, created a further risk of serious harm, but nothing happened. Id., p. 12. Mendoza argued he does not have to wait to be harmed to properly state an Eighth Amendment claim. Id.

Construed liberally[3], Mendoza claims that Mote and Tom failed to protect him in violation of the Eighth Amendment; and Cruz, in violation of the First Amendment, retaliated against him by threatening him, housing him with Inmate Battles, and falsifying records to cover up the incident. Id., p. 12.

As relief, Mendoza seeks compensatory damages for the value of the cost of his stolen property; reimbursement of litigation costs; and $100,000 in punitive damages from each defendant for the physical harm and emotional and mental trauma resulting from the attack. Id., pp. 17-18.

## II.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Accordingly, summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The

---

[3] See Mederos v. United States, 218 F.3d 1252, 1254 (11th Cir. 2000) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).

> moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11th Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to present sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise show there are material issues of fact which demand a trial. Fed. R. Civ. P. 56(e); Coleman

v. Smith, 828 F.2d 714, 717 (11th Cir. 1987). The trial judge, at the summary judgment stage, does not weigh the evidence but rather determines whether there is a genuine issue for trial: "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin Cty., Ala. v. Purcell Corp., 971 F.2d 1557, 1563 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, supra).

The Supreme Court has stressed:

> [w]hen the moving party has carried its burden under rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

Matasushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

## III.   Defendants' Motion for Summary Judgment, ECF No. 175

Defendants claim they are entitled to summary judgment for the following reasons:

a) "[Mendoza] failed to exhaust his administrative remedies as to Defendants Mote and Tom, and his property claim." ECF No. 175, pp. 16-30.

b) Mendoza has not proved his Eighth Amendment claim for failure to protect. Id., pp. 30-39.

c) Mendoza has not proved his First Amendment retaliation claim. Id., pp. 39-43.

d) The Court should decline supplemental jurisdiction over the property claims. Id., pp. 43-44.

e) Defendants are entitled to Eleventh Amendment immunity; therefore, Mendoza is not entitled to money damages. Id., pp. 44-48.

f) Defendants are entitled to qualified immunity; therefore, Mendoza is not entitled to money damages. Id., pp. 45-48

Defendants' factual account of the events is based on the case summary report issued by the FDOC Office of the Inspector General. Id., p. 7. Defendants maintain that, when Mendoza was showering, three (not six to eight) knife-wielding inmates wanted the combination to Mendoza's bunk

locker intending to rob him. Id. Video footage and reports confirm there were three assailants involved in the robbery but do not support the theory that they wielded knives, made threats, or sexually assaulted Mendoza. Id., p. 8. Essentially, Defendants argue the surveillance videos controvert Mendoza's claims. Id., pp. 8-9. "Where the video obviously contradicts [Mendoza's] version of the facts, [the court should] accept the video's depiction instead of [Mendoza's] account." Id., p. 16 (citing Pourmoghani-Esfahani v. Gee, 625 F.3 1313, 1315 (11th Cir. 2010) and Scott v. Harris, 550 U.S. 372 (2007)). Defendants provided certain exhibits under seal: video footage of the dorm on October 13, 2019, between 9:00 p.m. and 10:30 p.m. (Exh. D1), several photographs of the shower area (Exh. L), and Mendoza's eleven-minute, sworn interview, which was conducted on October 14, 2019, at 6:41 a.m., the morning after the attack (Exh. I).

## IV.   Mendoza's Response, ECF No. 194

Mendoza filed a response that is unsworn and without any supporting affidavits or depositions other than what Defendants provided in support of their summary judgment motion. ECF No. 194. Mendoza repeats his earlier arguments that he exhausted his administrative remedies. Id., pp. 1, 14. Ultimately, Mendoza's Response is a restatement of the operative complaint

and allegations that the prison records were falsified and his initial statements were torn up. Id., pp. 3-5.

Mendoza reiterates that Mote and Tom "abandoned their post" and "negli[gently]" failed to monitor the dorm and shower area, "with deliberate indifference." Id., pp. 6-7, 14. According to Mendoza, Mote and Tom were "grossly . . . negligent" because they did not monitor the dorm or conduct security checks according to procedure and "failed to follow" prison "rules, regulations or policies." Id., pp. 7-8. Mendoza describes it as "a neglect of duties . . . gross negligence . . . for the protection of life or property" deserving of "punishment." Id., pp. 8-9. Repeatedly, Mendoza insists "[t]he dorm was . . . not . . . adequately supervised/monitored" because Mote and Tom "abandone[ed] their post with reckless disregard for inmate[] safety in the dorm." Id., pp. 15, 29.

Mendoza argues there was no review of laundry room footage, which is an effort to cover up Defendants' culpability. Id., p. 16. He maintains the video evidence does not contradict or refute his version of the events and that "it's up to a jury to determine what happen[ed] or didn't happen based on the video footage . . . and witness[] testimony." Id., p. 23. Mendoza claims Defendants failed to search for his stolen property, most of which was never recovered. Id., pp. 17-18.

According to Mendoza, the motion for summary judgment should be denied because it is supported by falsified exhibits and documents. Id., p. 40. However, the mere assertion that supporting evidence is false, does not make it so. Mendoza states that he will present evidence and witnesses *at trial* that will support his claims. Id., pp. 24, 38. Unfortunately, for Mendoza, the time is *now* -- at summary judgment -- to provide evidence on each essential element of his claim sufficient to sustain a jury verdict to determine whether there are material issues of fact which would demand a trial. See Fed. R. Civ. P. 56(e).

## V.    Discussion

### A. Defendants' exhaustion defenses are moot or otherwise untimely.

Defendants maintain that Mendoza's administrative remedies remain unexhausted. ECF No. 175, pp. 16-30. It is significant that three motions to dismiss were filed earlier in this case. In the first motion to dismiss, the former FDOC secretary and Cruz raised various defenses: Eleventh Amendment immunity-, qualified immunity-, and failure to state a claim, but not exhaustion. ECF No. 71. Mote and Tom filed nearly identical, but separate, motions to dismiss and raised the exhaustion defense. ECF Nos. 122, 136.

The Prison Litigation Reform Act requires prisoners to exhaust available administrative remedies before filing a lawsuit. 41 U.S.C.

§ 1997e(a). The exhaustion requirement is "an affirmative defense." See Jones v. Bock, 549 U.S. 199, 216 (2007). The Eleventh Circuit has held that a defendant must raise the exhaustion defense in his first motion to dismiss or the defense is forfeited and cannot be raised later. This is because Fed. R. Civ. P. Rule 12(g)(2) limits "defenses that can be raised for the first time in a second or successive motion to dismiss under Rule 12." Brooks v. Powell, 706 F. App'x 965, 968 (11th Cir. 2017). "Specifically, the rule says: 'Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.'" Id. Thus, "a party cannot raise a defense in a second Rule 12 motion that it failed to raise in its first Rule 12 motion." Id.; see also Ford v. Hayes, No. 3:15-CV-907-J-32JRK, 2018 WL 3831167, at *6, n.8 (M.D. Fla. Aug. 13, 2018) (finding that defendants "forfeited the right to raise the defense in a subsequent motion" to dismiss); Oliver v. Whitehead, No. 3:14-CV-1506-J-39JRK, 2017 WL 5187752, at *2 (M.D. Fla. Nov. 9, 2017) (rejecting exhaustion defense raised in summary judgment motion because it was not raised in prior motion). See also Knuckles v. Jones, No. 3:13-cv-411-J-39JRK, 2016 U.S. Dist. LEXIS 14255, *4 (M.D. Fla. Feb. 4, 2016) (failure to exhaust was improperly raised in a motion for summary judgment after filing

an answer to the complaint and where the court previously rejected the defense presented in an earlier motion to dismiss).

"The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground.'" <u>Brooks</u>, 706 F. App'x at 969 (quoting <u>Ennenga v. Starns</u>, 677 F.3d 766, 773 (7th Cir. 2012). This is precisely what Defendants attempt to accomplish. The Rule prohibits that strategy. Cruz never raised exhaustion as a defense in his motion to dismiss and cannot raise it now. ECF No. 71. Mote and Tom presented their exhaustion defense in their motions to dismiss. ECF Nos. 122, 136. The Court initially granted them (ECF Nos. 140 and 145) but vacated that decision. <u>See</u> ECF No. 154. Ultimately, on September 7, 2022, the Court rejected the defense. ECF No. 158.

Not only is failure to exhaust improperly raised in a motion for summary judgment after filing answers to the operative complaint, but the Court previously rejected the defense. That argument will not be revisited, especially, when Defendants had three bites at that apple.

B. <u>Defendants are entitled to Eleventh Amendment Immunity for the Official Capacity Claims.</u>

Mendoza sued Cruz, Mote, and Tom in both their individual- and official capacities. However, the official capacity claims are barred by Eleventh

Amendment immunity. Prison employees are considered employees of the State of Florida for the purposes of a Section 1983 action. Florida's sovereign immunity extends to its agencies, subdivisions, or officers. See Alabama v. Pugh, 438 U.S. 781, 782 (1978); Fitzgerald v. McDaniel, 833 F.2d 1516 (11th Cir. 1987). That "bar exists whether the relief sought is legal or equitable." Papasan v. Allain, 478 U.S. 265, 276 (1986). Naming a government official in his official capacity is the equivalent of naming the governmental entity itself. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). A state official, however, may be sued in his official capacity when the suit alleges a constitutional violation by the official, acting in his official capacity and seeks only prospective injunctive relief. See Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011).

The only injunctive relief Mendoza sought was an order directing FDOC to house "security threat group inmates" separate from "non-security threat group inmates." ECF No. 33, p. 17. The Court denied that request. See ECF Nos. 110 and 124. Therefore, only the monetary damages remain. Because money damages fail as a matter of law, Defendants are entitled to summary judgment on the official capacity claims. What remains, then, are the claims against Defendants in their individual capacities.

C. <u>Mendoza fails to establish an Eighth Amendment violation</u>

Mendoza's claims of failure to protect largely rely on the premise that FDOC policies failed to control "STG" prisoners from endangering the safety of "non-STG" prisoners. <u>See</u> <u>generally</u>, ECF No. 33. Of course, those claims were previously dismissed. Mendoza alleged that Mote and Tom were negligent in their duty to stand guard at the officer's station or, alternatively, they conspired with "STG "inmates to be away from their post. ECF No. 33, p. 10. Mote and Tom argue that Mendoza cannot prove his claims. ECF No. 175, pp. 30-39. Aside from Mendoza's unsupported allegations in his complaint and sworn interview (Exh. I), there is absolutely no evidence in the record that Mote and Tom conspired with anyone to leave the post unattended. In both the complaint and the sworn interview, Mendoza claimed an unidentified inmate told him the assigned guards left their post to permit the attack. ECF No. 33; Exh. I, 5:08-6:08. Mendoza's claim is, at best, speculative.

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994) (citations omitted); <u>Caldwell v. Warden, FCI Talladega</u>, 748 F.3d 1090, 1099 (11th Cir. 2014). However, not "every injury suffered by one inmate at the hands of another that translates into a

constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003); see also Farmer, 511 U.S. at 828.

"When examining the first element—a substantial risk of serious harm—the court uses an objective standard." Caldwell, 748 F.3d at 1099 (citation omitted). The second element—deliberate indifference in the context of a failure to prevent harm—has a subjective and an objective component. Id. To satisfy the subjective component, a plaintiff must produce evidence that the defendant "actually (subjectively) knew that an inmate faced a substantial risk of serious harm." Id. (citing Rodriguez v. Sec'y for the Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a correctional officer's failure to act can constitute deliberate indifference." Brown, 894 F.2d at 1537.

The "risk calculation is a prospective determination of what might happen based upon events that have already occurred." Brooks v. Warden, 800 F.3d 1295, 1301-02 (11th Cir. 2015). It does "not allow the advantage of

hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment." Id. (citation omitted). The claim requires the defendant to be subjectively aware "of a particularized threat or fear felt by [p]laintiff." Carter, 352 F.3d at 1350. The Eleventh Circuit stated:

> A prison official cannot avoid liability under the Eighth Amendment 'by showing that . . . he did not know the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.' . . . This is because '[t]he question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'

Rodriguez, 508 F.3d at 617 (internal citations omitted).

> [I]it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk . . . If, for example, prison officials were aware that inmate 'rape was so common and uncontrolled that some potential victims dared not sleep [but] instead . . . would leave their beds and spend the night clinging to the bars nearest the guards' station,' . . . it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom.

Farmer, 511 U.S. at 843-44 (internal citations omitted).

To satisfy the objective component of the deliberate indifference element, a plaintiff must produce evidence that the defendant "disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." Rodriguez, 508 F.3d at 617. Prison officials may escape liability on

a deliberate indifference claim if they show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent. See Farmer, 511 U.S. at 844. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" and does not give rise to a constitutional violation. Id. at 838.

To survive summary judgment on a deliberate indifference failure-to-protect claim, "a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) causation." Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013). The prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Merely negligent failure to protect an inmate from attack does not justify liability under Section 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (citing Davidson v. Cannon, 474 U.S. 344, 347-48 (1986). The burden is on Mendoza to present specific evidence, *now* – not at trial, from which a jury

could reasonably find in his favor. "The mere existence of a scintilla of evidence in support of [his] position will be insufficient." Anderson, 477 U.S. at 252.

In the complaint, primarily, Mendoza alleged that FDOC housing policies created a risk of harm. Id., pp. 7, 13-14. Mendoza notified the FDOC that policies created a risk of harm; however, Mendoza did not allege any facts that Mote and Tom subjectively knew of a substantial risk of serious harm to Mendoza and that they knowingly or recklessly disregarded that risk. Id., pp. 7, 13-14. See Goodman, 718 F.3d at 1332. Mendoza's vague allegations, at most, allege negligence by Mote and Tom. Mendoza argued that Mote and Tom were intentionally not at the officer station at the time of the attack. ECF No. 33, pp. 7-8. Mendoza suggested that their failure to stand guard was a *contributing* factor -- if Mote and Tom were "in the officer station they could [have] and would [have] observed and stopped the incident and likely even prevented it." Id., pp. 10-11. Mendoza believes leaving the dorm unsupervised "invit[ed] . . . a tragic event to occur." Id., p. 16. Repeatedly, in his Response, Mendoza claims that Mote and Tom were *negligent* in carrying out their duty to stand guard. Mote and Tom "conv[enie]ntly fail[ed] to monitor" the showers and dorm and did not due security checks. ECF No. 194, p. 6. Similarly, Mendoza maintains, "the

neglect of . . . Tom and Mote result[ed] in [Mendoza] being robbed and sexually assaulted at knife point"; "[i]n a negligent manner," Mote and Tom "fail[ed] to adequately monitor the dorm . . . failed to maintain security by . . . not conducting dorm walk through security checks every 30 minutes or every hour as required . . . in accordance with procedure." Id., pp. 7-8. Mendoza's injuries "result[ed] from a neglect of duties" and "may be considered . . . gross negligence." Id., p. 8. All of that may be true, but negligent failure to protect an inmate from attack will not support a § 1983 claim. See id. (noting that a prison official's failure to supervise the dorm where plaintiff was housed was merely negligent and did not demonstrate that guards "knew of a substantial risk of serious harm" to plaintiff who was attacked by another inmate). Mendoza's assertion that some unidentified inmates told him Mote and Tom conspired or were somehow complicit, is insufficient. See ECF No. 33, pp. 7-8. Similarly, the claim that Mote and Tom "neglect[ed] their duties" in violation of the Florida Administrative Code also fails because violating prison policy is not a basis for imposing liability under Section 1983. Goodman, 718 F.3d at 1335; Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000).

Mendoza claimed he was not the only one at risk due to FDOC policies but that various groups of "non-STG" inmates were at risk for assault from

STG inmates. Id. Those at risk included inmates who were not gang members, LGBTQ inmates, those incarcerated for certain criminal convictions, and those who filed grievances or lawsuits. Id., p. 8. During deposition, Mendoza stated "STG" inmates would target "non-STG" inmates who were also black or Jewish. ECF No. 175-3, p. 33. In the complaint, Mendoza identified "STG" inmates as members of "hate groups" (and certain prison gangs including "Unforgiven, Crazy White [B]oys, Outlaw") who "control, threaten, assault, and abuse other inmates." ECF No. 33, p. 11. They target inmates for robbery, extortion, and physical assault. ECF No. 175-3, p. 33. Still, the claims relating to FDOC housing policies were previously dismissed and cannot be transferred to the remaining defendants.

The challenge for Mendoza is that to successfully contest a summary judgment supported by evidence, he must provide his own evidence and cannot rely solely on the allegations in his complaint or other pleadings. Mendoza did not provide any affidavits or sworn statements from any witness that show Mote and Tom were aware of any specific events, threats, or substantial risks of danger to anyone *before* the *attack* or that they responded in an unreasonable manner and points to no evidence that supports that inference.

The record shows that upon being notified of the attack, Mote and Tom responded immediately. Mendoza admitted he reported the robbery to Mote and Tom, but they first told him to go to his bunk only because it was count time. ECF No. 175-3, p. 12. Mendoza originally complied but then left his bunk to go to the officer's station because he felt he was in danger, they directed him to go to the laundry room. Id., pp. 12, 18; see also Mote's sworn declaration, ECF No. 175-7, and Tom's sworn declaration, ECF No. 175-8. Both reported the incident, other officers came down, and the video was reviewed. ECF No. 175-3, p. 12; see also Mote's sworn declaration, ECF No. 175-7, p. 2. They investigated the theft and asked Mendoza to write a statement. Id., pp. 12-13; see also Mendoza's sworn interview Exh. I. Officers were able to recover a substantial portion of Mendoza's property. ECF No. 175-7, p. 2.

First, Mendoza reported only the robbery at knifepoint because officers were making jokes. Id., p. 19. When asked if he was harmed, Mendoza initially responded, "No." Id. Mendoza waited until he was transported to the main unit (less than five minutes away) for a medical evaluation to report the sexual assault. Id., p. 20; see Mendoza's Deposition, ECF No. 175-33, p. 28. Mote was present when Mendoza reported the sexual assault to a nurse. ECF No. 175-7, p. 2. Upon hearing of the sexual assault, Mote notified

Defendant Cruz, the hospital officer in charge, and Captain Kent, the officer in charge at West Unit. Id. Mote was not present for the PREA interviews but later escorted Mendoza to confinement. Id.

Mendoza's witness statement on the day of the attack, does not report a sexual assault. ECF No. 175-5. This is consistent with his own deposition. Mendoza stated that three (not six to eight) inmates "came into the showers with weapons [and] forced [him] to give them [the] combination to [his] lock and stole all [his] personal property and threatened [him]." Id., p. 1. Mendoza's statement the following day, repeats the same allegations, but he added that one of the assailants sexually assaulted him. Id., p. 2.

According to the MINS Incident Report, Mote transported Mendoza to the main unit for a pre-confinement physical or protective management. ECF No. 175-6. Mote reported that when Mendoza alleged an inmate sexually assaulted him, "[s]taff were placed at the crime scenes," and the video footage was reviewed. Id., p. 2. Prison officials provided Mendoza with a copy of the FDOC sexual abuse awareness program, advised Mendoza of his rights, and completed the required PREA memos. Id., p. 2.

Mendoza insists that video surveillance will confirm that the attack occurred in the bathroom when Mote and Tom were not at their assigned post. ECF No. 194, pp. 15-16. The video does not confirm any assault or the

abandonment of guard station. Exh. D1. It is difficult to discern whether any guard was in the booth given the distance from the fixed wing camera. Id. The video shows that between 9:07 p.m. and 9:41 p.m. Mendoza wanders the dorm, converses with inmates, and returns to his bunk periodically to search his locker or other areas on his bunk. Id. At around 9:44 p.m., Mendoza gathered some items and towels and left the dorm. Id. In the interim, from 9:57 p.m. through 10:01 p.m., three inmates at various times were at Mendoza's bed locker, filled laundry bags with Mendoza's property, and then unloaded the items at another bunk. Id. Mendoza returned to his bunk at 10:09 p.m., in different clothing, and with towels in hand. Id. Mendoza sat on his bunk and talked with various inmates for approximately fifteen minutes; intermittently, one or two inmates at a time sat on the bunk with him. Id. At 10:24 p.m., Mendoza, left the dorm, returned to his bunk at 10:27 p.m., gathered a laundry bag with items, and left the dorm again. Id.

The Court is not unsympathetic to Mendoza's allegations that he was sexually assaulted and robbed. But, at this stage, the central issue is not about the assault nor whether Mote and Tom were at their post. The central issue at this stage is whether their alleged failure to be present at the officer's station rises to the level of a constitutional violation. The fact that Mote and

Tom were not present at the officer's station or negligently abandoned their post, without more, cannot support a Section 1983 claim.

Mendoza cannot prove the objective element to find Mote and Tom liable for an Eighth Amendment violation. There is no evidence they knew of any facts that Mendoza (or anyone) faced a substantial risk of serious harm that was more than just a mere possibility of serious harm. In fact, Mendoza testified he never had any interaction with Mote or Tom until he reported the attack to them. ECF No. 175-3, pp. 10-13. Mendoza never put Mote or Tom on notice of any threat and presents nothing now to show that Mote and Tom had notice from anyone else. Mendoza's failure to provide proof undermines those allegations. There must be more than some doubt as to material facts. Mendoza fails to show there are material issues of fact that demand a trial. Summary judgment should be granted in favor of Mote and Tom.

D. Mendoza failed to prove a First Amendment retaliation claim

In the complaint, Mendoza claimed Cruz retaliated against him for reporting the sexual assault. Cruz slapped Mendoza in the chest, threatened him with a disciplinary report, and said he would have Mendoza harmed by other inmates. ECF No. 33, pp. 11, 16; see also Exh. I, 9:08-9:37. There is no factual description of any specific threat by Cruz. Id. However, during his sworn interview, Mendoza alleged that Cruz made a threat to "gas" him in

confinement. Exh. I, 9:08-9:37. In the complaint, Mendoza alleged Cruz "colluded with other staff to house [him] . . . in violation" of FDOC regulations to place him "at serious risk of harm." ECF No. 33, pp. 11, 16. In his sworn statement, Mendoza made no allegations that Cruz "colluded" with anyone or made threats to have other inmates harm him. Exh. I. Again, there is no factual account or any evidence of any conspiracy; it is pure speculation.

"The First Amendment forbids prison official from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). "An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were 'the result of the inmate's having filed a grievance concerning the conditions of his imprisonment.'" O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (alteration incorporated). To prevail on a retaliation claim based on a threat, a plaintiff must establish: "(1) he engaged in constitutionally protected conduct; (2) the defendant's retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct." Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1063 (11th Cir. 2013).

As to the first element, Mendoza's report of the attack qualifies as protected activity under the First Amendment. However, Mendoza must

allege that Cruz's threat or act adversely affected him. Bennet v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005). Mendoza alleges that Cruz placed Inmate Battles into Mendoza's confinement cell intending for Battles to harm Mendoza, but nothing happened as a result of the housing assignment. ECF No. 33, p. 16. General and vague allegations about threats are insufficient to state a cause for retaliation under the First Amendment. Vague and conclusory allegations, like Mendoza's, have been consistently rejected for failing to rise to the level of a constitutional violation. See e.g., Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984). Generally, courts have held that general allegations of verbal harassment or verbal abuse are insufficient under Section 1983. Magwood v. Beem, 2015 U.S. Dist. LEXIS 22875, 2015 WL 796242, *13 (N.D. Fla. Feb. 25, 2015) ("In general, courts have held that verbal harassment, abuse, or taunting is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983"); McDaniels v. CCDC, 2007 U.S. Dist. LEXIS 99691, 2008 WL 282485, *4 (S.D. Ga. Jan. 31, 2008) (finding allegations insufficient where Plaintiff "merely submit[ted] a general allegation that he was verbally abused as a result of his grievance appeal"); Oliver v. Whitehead, 2017 U.S. Dist. LEXIS 218, 2017 WL 26860, *6 (M.D. Fla. Jan. 3, 2017) (granting motion to dismiss claims of retaliation based on of verbal abuse or harassment).

During deposition, Mendoza testified prison officials put him into confinement for his own protection two days after the attack and then two days later, he was moved. ECF No. 175-3, pp. 21, 23, 28. However, FDOC records show that *less than four hours* after the attack, on October 14, 2019, at 2:02 a.m., Mendoza was placed in confinement cell K2219 and was reassigned the next day at 3:08 p.m. See sworn "Declaration of Amber Vargas," Assistant Bureau Chief, FDOC Central Office at ECF No. 175-12; "Report of Protective Management" at ECF No. 193, p. 51. Inmate Battles was assigned to the same cell on October 15, 2019, at 5:13 p.m. ECF No. 175-12. Both inmates were awaiting an administrative status change. Id.; see also Mendoza's Response, ECF No. 194, p. 19. "Mendoza was awaiting a review of his protection needs request"; Battles was awaiting a disciplinary hearing. Id. Mendoza argues this assignment violated prison regulations. ECF No. 194, p. 20. Cruz was not on duty when Battles arrived at RMC; so, he did not order or place Battle in the cell. ECF No. 175-13. Cruz was "off duty" by 7:11 a.m., on October 14, 2019, and remained so for the rest of October 14th and October 15th. Id. In fact, Mendoza and Battles were not assigned to the same confinement cell while Cruz was on duty given the overlap in time. ECF No. 175-12.

Even assuming Mendoza's version of events is accurate, the cell assignment alone would be insufficient to state a claim. First, Mendoza never claimed anything adverse occurred between he and Battles. <u>See</u> Mendoza's Deposition, ECF No. 175-3, pp. 20-22. Mendoza's claim rests on being placed in confinement in violation of prison regulations. <u>Id.</u>; <u>see also</u> Mendoza's complaint, ECF No. 33, pp. 11-12, 16 (alleging the "intentional disregard for the established rules, intentional endangerment . . . constitutes cruel and unusual punishment"). This is not the standard. As stated above, violations of prison policy cannot support a Section 1983 action. A prisoner has no right to any particular classification or housing assignment. <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005).

Mendoza insists that Defendants' exhibits are falsified; and he remained in confinement until October 17, 2019, in fear of his safety. However, the mere assertion of falsity does not make it so. Mendoza is mistaken; no retaliation claim can survive without providing evidence that he suffered an adverse effect. ECF No. 33, p. 12. Here, there is none. Summary judgment should be granted in favor of Cruz.

E.  <u>Defendants are entitled to qualified immunity.</u>

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless

their conduct violates a clearly established statutory or constitutional right." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The court considers: "whether the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the alleged transgression. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Keith v. Dekalb Cty., 749 F.3d 1034 (11th Cir. 2014). In short, Mendoza must show that Defendants violated his constitutionally protected right and the right was "clearly established" at the time.

Dismissal based on qualified immunity is proper "when the complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). While the Court is required to accept the allegations in the complaint as true, once a defendant raises a qualified immunity defense, the burden of persuasion belongs to the Mendoza. Id. The Court is not required to accept Mendoza's legal conclusions as true. For the reasons stated above, Mendoza fails to state any claim of a constitutional violation against any of the Defendants. Therefore, Defendants are entitled to qualified immunity.

F. <u>The Court should decline to exercise supplemental jurisdiction on the state law property claims.</u>

Defendants argue that Mendoza's state property claims should be dismissed for failure to exhaust administrative remedies. ECF No. 175, pp. 43-44. As explained above, this defense is not properly raised at summary judgment. Nonetheless, the state property claims never proceeded here. Mendoza was only permitted to proceed on his retaliation claim against Cruz and the failure-to-protect claims against Mote and Tom. <u>See</u> ECF Nos. 110, 124, 158. Still, it is worth noting that even if Mendoza's property were an issue, his claim fails. It is well settled that a prisoner's claim for the deprivation of his property does not amount to a violation of due process under the Constitution of the United States. In <u>Hudson v. Palmer</u>, the Supreme Court of the United States held:

> Unauthorized intentional deprivations of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property . . . the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

468 U.S. 517, 533 (1984). The State of Florida provides adequate post-deprivation remedies for a plaintiff to sue in state courts and recover any damages for the loss of his property. <u>See</u> Fla. Stat. § 768.28. Similarly, mere

negligence by prison officials may state a claim under state law but is insufficient to establish a constitutional violation. <u>Daniels v. Williams</u>, 474 U.S. 327, 333 (1986). Accordingly, this Court should decline to exercise supplemental jurisdiction over the property claims.

## VI. Conclusion and Recommendation

For the reasons stated above, it is respectfully **RECOMMENDED** that the exhaustion defenses be **DENIED as MOOT** and Defendants' Motion for Summary Judgment, ECF No. 175, be **GRANTED**. It is also recommended that the case be **CLOSED** and summary judgment be entered in favor of Defendants.

**IN CHAMBERS** at Tallahassee, Florida, on July 17, 2023.

**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).